UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MARIKO G. E.,[1] | ) | No. CV 20-0934 AGR |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff[1] filed this action on January 28, 2020.  The parties filed a Joint Stipulation that addressed the disputed issue.  The court has taken the matter under submission without oral argument.[2]

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

---

[1]  Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2]  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge.  (Dkt. Nos. 12, 13.)

# I.

## **PROCEDURAL BACKGROUND**

Plaintiff filed an application for supplemental security income benefits on July 29, 2016, and alleged an onset date of July 1, 2003.  Administrative Record ("AR") 12.  The application was denied initially and on reconsideration.  AR 12, 74, 83.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On December 13, 2018, the ALJ conducted a hearing at which Plaintiff and a vocational expert testified.  AR 28-64.  On January 17, 2019, the ALJ issued a decision denying benefits.  AR 9-23.  On December 10, 2019, the Appeals Council denied review.  AR 1-5.  This action followed.

# II.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

III.

**DISCUSSION**

**A.    Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22 (2003) (citation and quotation marks omitted).

**B.    The ALJ's Findings**

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[3] the ALJ found that Plaintiff had the severe impairments of bipolar spectrum disorder with anxiety; and a learning disorder with mild neurocognitive disorder.  AR 14.

The ALJ found that Plaintiff had the residual functional capacity to perform work at all exertional levels with the following mental limitations.  She can understand, remember and carry out simple instructions; make simple work related decisions; perform routine tasks at a consistent pace but not at a production rate pace in which each task must be completed within a strict time deadline; tolerate occasional interaction with coworkers and supervisors but no interaction with the public; and tolerate occasional changes in a routine work setting.  AR 17.  Plaintiff has no relevant past work.  AR 21.  The ALJ concluded that there are jobs that exist in significant

---

[3]  The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

1  numbers in the national economy that Plaintiff could perform such as cleaner, laborer

2  and small products assembler.  AR 21-22.

3      **C.    Plaintiff's Allegations**

4      In assessing a claimant's subjective allegations, the Commissioner conducts a

5  two-step analysis.  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).  First, the ALJ

6  determines whether the claimant presented objective medical evidence of an

7  impairment that could reasonably be expected to produce the symptoms alleged.  *Id.*

8  The ALJ found that Plaintiff's medically determinable impairments could reasonably be

9  expected to cause the alleged symptoms.  AR 18.

10     Second, the ALJ evaluates the intensity and persistence of the claimant's

11  symptoms and determines the extent to which those symptoms limit the claimant's

12  ability to perform work-related activities.  Social Security Ruling ("SSR") 16-3p.  Absent

13  malingering, the ALJ must give specific, clear and convincing reasons for discounting

14  the claimant's subjective allegations.  *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir.

15  2020).  To do so, the ALJ must identify the claimant's testimony that is found not to be

16  credible and explain what evidence undermines that testimony.  On the other hand,

17  "[o]ur cases do not require ALJs to perform a line-by-line exegesis of the claimant's

18  testimony, nor do they require ALJs to draft dissertations when denying benefits."  *Id.*

19     The ALJ discounted Plaintiff's testimony because the severity of her allegations

20  were:  (1) unsupported by the medical evidence; (2) inconsistent with the frequency or

21  extent of treatment she sought; and (3) inconsistent with her daily activities.[4]  AR 17-21.

22     The ALJ's first reason is not supported by substantial evidence.  The objective

23  medical evidence is consistent with the severity of Plaintiff's alleged symptoms.  Plaintiff

24  was diagnosed with bipolar disorder, mixed, and anxiety disorder, not otherwise

25  specified.  She was a ward of the court and, after emancipation, was placed in Athena

26

27     [4] The ALJ also noted that Plaintiff twice failed to attend a consultative psychological
   examination, but proceeded to examine the claim on the merits due to her housing
28  issues.  AR 20.

Homes, where she stayed for the maximum period of two years.  The treatment team referred Plaintiff to an independent living program ("ILP") because she required support. Her symptoms cause functional impairments and include depression, anxiety, restlessness, poor anger management, neediness, hopelessness, poor concentration and poor impulse control.  AR 280-81, 286.

On April 30, 2015, Plaintiff's mental status examination indicated her mood was euthymic, her concentration was impaired by thought blocking, her judgment and insight were poor, her serial 7s were poor, and she had poor impulse control.  AR 285.  Her Global Assessment of Functioning (GAF) score was 52.[5]  AR 286.

In May 2015, Plaintiff's mental status examination indicated she was anxious, irritable, and jittery with poor insight.  She was easily influenced by suggestion, and exhibited limited decision-making ability and poor working memory.  She gave impulsive responses with poor organization and was quick to interrupt.  She was unable to identify functional difficulties due to illness and required assistance.  AR 290-91.  Psychological evaluations from 2013-2014 indicated emotional disturbance and anxiety that interfered with her ability to learn from study materials.  She had poor memory and concentration resulting in difficulty retaining information.  She had a learning disorder and neurocognitive disorder, mild.  She was easily angered, had frequent lapses of judgment and had difficulty communicating in an appropriate manner.  AR 291-92.

Subsequent mental status examinations consistently indicated poor insight and inability to identify her own functional difficulties due to her illness.  AR 295.  In June 2015, she attempted to be too friendly and was unable to systematize information due

---

[5]  A GAF score of 51-60 "indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or workers)." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. text rev. 2000).  "Although GAF scores, standing alone, do not control determinations of whether a person's mental impairments rise to the level of a disability (or interact with physical impairments to create a disability), they may be a useful measurement."  Garrison v. Colvin, 759 F.3d 995, 1002 n.4 (9th Cir. 2014).

1   to lack of concentration, distractibility and avoidance.  She had poor working memory
2   and insight, and the treating provider was concerned that Plaintiff would forget to take
3   her medications.  Plaintiff required continued treatment to decrease psychiatric
4   symptoms and prevent relapse or hospitalization.  AR 294-95.  In July 2015, however,
5   Plaintiff ingested 20 pills and was placed on a 5150 hold.[6]  AR 299.  At subsequent
6   evaluations, she continued to exhibit the same symptoms.  AR 301.  In August 2015,
7   Plaintiff exhibited grandiose, expansive symptoms and poor insight.  She reported
8   improvement in activities of daily living but had difficulty establishing any meaningful
9   relationship due to inability to find appropriate topics of conversation and difficulty
10  speaking in public.  She had a poor working memory and forgot details by the end of the
11  session.  Her stories had empty content.  AR 303.

12      In June 2016, Plaintiff started a new treatment plan for mania, anxiety and side
13  effects from medication.  AR 351.  In July 2016, Plaintiff appeared nervous and was not
14  taking medications as prescribed.  She complained that medication slowed her down.
15  She disliked not having racing thoughts because she was used to them.  Her
16  medication was adjusted to reduce manic symptoms.  AR 345-46.  Plaintiff reported that
17  she had a boyfriend and felt she was ready to start job training at Chrysalis so she
18  could earn money and they could move in together.  She complained about side effects
19  from Abilify and discussed relaxation exercises to reduce manic symptoms.  AR 341-42.
20  She had poor insight and continued to exhibit poor working memory and concentration
21  resulting in difficulty retaining information.  Therapy was needed to stabilize affect
22  dysregulation, disruptive behavior, and erratic mood.  AR 367-68.  In August 2016,
23  Plaintiff was agitated and complained about restrictions in the ILP that prevented her
24  from going to the beach with her boyfriend and his friends.  She wanted to leave but

25
26      [6] "When any person, as a result of mental disorder, is a danger to others, or to
    himself or herself, or gravely disabled, [designated persons] may, upon probable cause,
27  take, or cause to be taken, the person into custody and place him or her in a facility
    designated by the county and approved by the State Department of Social Services as
28  a facility for 72-hour treatment and evaluation."  Cal. Welf. & Inst. Code § 5150.

changed her mind by the end of the session.  AR 339-40.  However, on August 17, 2016, Plaintiff was discharged from the ILP with an unchanged diagnosis and an unchanged GAF of 52.  AR 347.

In October 2016, Plaintiff walked into an urgent care facility for a psychiatric/ medication evaluation.  She had left the ILP because she was unhappy with its services and had discontinued medications.  She was feeling depressed, anxious and hopeless with paranoid thoughts and "fearing where I may end up in my life."  Plaintiff did not meet the criteria for a 5150 hold.  Her mood was down with an anxious affect.  She had fair insight and impulse control, and was restarted on medications.  AR 316, 318-19.

In November 2017, Plaintiff was referred to the Department of Mental Health Full Service Partnership ("FSP") for Transition Age Youth due to ongoing homelessness, partaking in risky behavior for survival, and chronic anxiety and depression.  Plaintiff reported having flashbacks, agitation, racing thoughts, shaking, and trouble concentrating.  When she became homeless, she could not receive treatment and became unstable. AR 374.  She could not keep a job because she moved around too often.  Plaintiff was being moved from a shelter to transitional/shared housing.  AR 381. Her mental status examination indicated restless motor activity, incoherent speech, impaired intellectual functioning, tearful and anxious mood, and sad and worried affect. Her concentration was impaired by clouding of consciousness.  Her judgment and insight were adequate. AR 383-86, 388-89.  She was diagnosed with generalized anxiety disorder and post traumatic stress disorder.  AR 393-94.  She had not taken medications for the past 10 months.  AR 399.  In December 2017, Plaintiff's mood and affect were anxious.  She agreed to take Prozac.  AR 402.  In January 2018, Plaintiff had been taking the medication for one month and reported less anxiety.  Her concentration was fair but she was occasionally distracted and forgetful.  She used marijuana for depression.  Her mood was euthymic.  AR 407-08.

In April 2018, Plaintiff had stopped taking Prozac three weeks earlier.  She reported anxiety, depression, elevated irritability, and energy bursts alternating with low

energy.  People complained that she talked too fast.  Plaintiff laughed at times for no known reason.  She had tantrums and reported a physical altercation with a significant other, after which she felt like cutting herself.  AR 410-11.  Her mood was depressed.  She agreed to try Latuda with Prozac.  AR 411-12.  In May 2018, Plaintiff reported partial adherence to medication, and side effects of sedation and possible nausea.  She reported unstable mood including daily sad and anxious spells, impaired cognition, difficulty sustaining attention, rapid thoughts, being disruptive during conversations, laughing uncontrollably, and difficulty sitting still.  AR 413.  Plaintiff had a depressed mood and her response to medication was poor.  Her medication was changed.  AR 414-15.  In June 2018, Plaintiff was fully oriented and reported using only Prozac.  She felt unbalanced and laughed for no reason.   For the past month, she heard voices and had visual hallucinations, with her friends saying that the shadows she saw were just trees.  AR 416-17.  Plaintiff's mood was anxious and depressed, and her affect was inappropriate.  Plaintiff started Risperidone for psychotic symptoms.  AR 417-18.

In September 2018, Plaintiff was transferred to Kedren Community Health, an FSP program closer to her residence.  She had made some progress in that her anxiety decreased from seven days per week to five days per week; and flashbacks or other trauma symptoms decreased to three times per week.  AR 431.

The ALJ's second reason is also unsupported by substantial evidence.  As discussed above, the medical record contains explanations for gaps in treatment and for Plaintiff's failure to adhere to the medications due to side effects, homelessness, poor judgment, and poor working memory such that the treating provider was concerned she would forget to take her medications.  The gaps in treatment were explained by homelessness or poor judgment integral to her mental illness.  The gaps in treatment were unsuccessful, with Plaintiff later seeking treatment for increased mental symptoms.  Contrary to the ALJ's observation, the treatment providers did try different medications based on Plaintiff's symptoms.  AR 294-95, 316, 318-19, 345-47, 374, 399, 402, 410-18.

1    The third reason is insufficient on its own to support the ALJ's finding as to the

2  severity of Plaintiff's allegations.  *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th

3  Cir. 2007) (question is whether ALJ's decision remains legally valid, despite such error,

4  because ALJ's "remaining reasoning and ultimate credibility determination were

5  adequately supported by substantial evidence in the record" (italics omitted)).  During

6  the course of Plaintiff's therapy, Plaintiff's ability to do activities of daily living improved

7  to the point that she could do them independently.  However, the Commissioner is

8  required to assess whether a claimant has the ability to work on a sustained basis.

9  *Reddick v. Chater*, 157 F.3d 715, 724 (9th Cir. 1998).  Plaintiff's ability to perform

10 activities of daily living alone does not support her ability to work on a sustained basis.

11 The medical records continue to note her unstable moods, erratic behavior, impaired

12 concentration and attention, and episodes of uncontrollable laughter for no reason.  AR

13 383-86, 388-89, 407-08, 413-18.

14                                        **IV.**

15                                      **ORDER**

16    IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and

17 the matter is remanded for reconsideration of Plaintiff's allegations, including in light of

18 the longitudinal medical records.

19

20

21 DATED: March 16, 2021

                                   _____
22                                      ALICIA G. ROSENBERG
                                     United States Magistrate Judge
23

24

25

26

27

28